UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT SELEVAN, ANNE RUBIN, DAVID TALARICO and SAMUEL TAUB, individually and on behalf of all others similarly situated, Plaintiffs, v. NEW YORK STATE THRUWAY AUTHORITY and JOHN L. BUONO, in his official capacity as Chief Executive Officer and Chairman of the New York State Thruway Authority, Defendants. | Civil Action No. 06-cv-291 (GLS/DRH) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**


Seth R. Lesser
Fran L. Rudich
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
(914) 934-9200

Harley J. Schnall
LAW OFFICE OF HARLEY J. SCHNALL
711 West End Avenue
New York, New York 10025
(212) 678-6546

Attorneys for Plaintiffs

**TABLE OF CONTENTS**

I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 2

III. ARGUMENT ........ 3

A. The Requirements Of Rule 23(a) Are Satisfied ........ 5

1. The Members Of The Class And Sub-Class Are So Numerous That Joinder Of All Members Is Impracticable ........ 6

2. There are Questions of Law and Fact Common to Plaintiffs and the Class and Sub-Class ........ 7

3. Plaintiffs' Claims Are Typical of the Classes They Seek to Represent ........ 8

4. Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Interests of the Class ........ 9

B. The Plaintiffs Meet the Standards For Class Certification Under Rule 23(b)(2)........ 10

C. The Plaintiffs Meet the Standards For Class Certification Under Rule 23(b)(3)........ 12

1. Common Questions Predominate ........ 12

2. A Class Action Is A Superior – Indeed, The Only – Method Of Resolving These Claims ........ 13

a. The Interest of Class Members in Individually Controlling the Prosecution of Separate Actions ........ 14

b. The Extent and Nature of any Litigation Concerning the Controversy Already Commenced by Members of the Class and Sub-Class and the Desirability of Proceeding in the Northern District of New York ........ 14

c. The Difficulties of Managing this Class Action ........ 15

IV. CONCLUSION ........ 16

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........ 12

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52 (2d Cir. 2000)........ 9

*Brown v. Kelly,* 609 F.3d 467 (2d Cir. 2010)........ 7

*Charrons v. Pinnacle Group NY LLC*, 2010 U.S. Dist. LEXIS 42327 (S.D.N.Y. 2010) ........ 11

*Cohen v. Rhode Island Turnpike And Bridge Auth*., C.A. No. 09-1535 (D.R.I. 2009) ........ 2

*Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 484 (2d Cir. 1995) ........ 10

*Dura-Bilt Corp. v. Chase Manhattan Bank*, 89 F.R.D. 87 (S.D.N.Y. 1981)........ 8

*Eldred v. Comforce Corp.*, 2010 U.S. Dist. LEXIS 18260 (E.D.N.Y. 2010)........ 6

*Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. at 156 (1982) ........ 8

*Finch v. N.Y. State Office of Children & Family Servs*., 252 F.R.D. 192 (S.D.N.Y. 2008)........ 11

*Fleischman v. Albany Medical Center,* 2008 U.S. Dist. LEXIS 57188 (N.D.N.Y. 2008) ........ 9

*Heerwagen v. Clear Channel Communs.*, 435 F.3d 219 (2d Cir. 2006)........ 3

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d. 285 (2d Cir. 1992)........ 9

*In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) ........ 4, 12

*In re Joint E. & S. Dist. Asbestos Litig*., 78 F.3d 764 (2d Cir. 1996) ........ 9

*In re NASDAQ Market Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996) ........ 6, 14, 16

*In re Rezulin Prods. Liability Litig.*, 210 F.R.D. 61 (S.D.N.Y. 2002)........ 12

*In re Visa Check/Mastermoney Antitrust Litig*., 280 F.3d 124 (2d Cir. 2001) ........ 12

*Jermyn v. Best Buy Stores*, L.P., 256 F.R.D. 418 (S.D.N.Y. 2009)........ 13, 15

*Johns v. DeLeonardis*, 145 F.R.D. 480 (N.D. Ill. 1992)........ 14

*Macarz v. Transworld Systems, Inc.,* 193 F.R.D. 46 (D. Conn. 2000)........ 13

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) .................................................................. 4, 5

*Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147 (2d Cir. 2001) ............................. *passim*

*Selevan v. N.Y. Thruway Auth.,* 584 F.3d 82 (2d Cir. 2009)......................................................... 13

*Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134 (2d Cir. 2001) ................. 8

*Thompson v. Linvatec Corp.,* 2007 U.S. Dist. LEXIS 37711 (N.D.N.Y. 2007)....................... 7, 10

*Weber v. Align Technology, Inc.,* 2010 U.S. Dist. LEXIS 54187 (N.D.N.Y. 2010)....................... 9

**Other Authorities**

Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002) ............................. 7, 9

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................... *passim*

## I. INTRODUCTION

Plaintiffs submit this memorandum in support of their Motion for Class Certification of the following class and sub-class:[1]

> All motorists ,who, since March 6, 2000 (the "Class Period"), paid a toll at the Grand Island Bridge for a motor vehicle classified by Defendants as "2L" with an electronic transponder issued by the E-ZPass New York Customer Service Center without the benefit of the resident discount that has been and is made available by Defendants for residents of Grand Island (the "Class"); and all New York resident motorists who, since March 6, 2000 (the "Sub-Class Period"), paid a toll at the Grand Island Bridge for a motor vehicle classified by Defendants as "2L" with an electronic transponder issued by the E-ZPass New York Customer Service Center without the benefit of the resident discount that has been and is made available by Defendants for residents of Grand Island (the "Sub-Class"). Excluded from the Class and Sub-Class are Defendants and any and all of their respective affiliates, legal representatives, heirs, successors, employees, or assignees.

This lawsuit implicates a core principle enshrined in not one, but multiple places, in the United States and New York State Constitutions: that the government may not discriminate in favor of some of its citizens against others. Defendants created and imposed a residency-based discount program for the Grand Island Bridge that violates the United States and New York Constitutions. These violations negatively affect all members of the Class and Sub-Class in the same way: by providing discounts only to the residents of Grand Island based solely on such residency, with no permissible basis for such distinction. Plaintiffs' causes of action were upheld by the Second Circuit in this case and, accordingly, Plaintiffs submit that their claims for violation of Art. I, § 8, Cl. 3 ("the Commerce Clause"), Amend. XIV, § 1, Cl. 2 ("the Privileges or Immunities Clause"), Amend. XIV, § 1 ("the Equal Protection Clause") of the United States Constitution and Art. I, § 11 of the New York State Constitution should be certified.

---

[1] The sought Class and Sub-Class are more narrow in scope than those asserted in the Second Amended Complaint, but this limitation seems practicable and sensible inasmuch as, by limiting the scope to persons with transponders issued by the E-ZPass New York Customer Service Center, the most frequent users of the facilities are encompassed and a more focused set of ultimate class members would be before the Court.

That this case is the paradigm for class certification is veritably self-evident, since a determination as to whether Defendants committed constitutional violations will not require the trier of fact to look at the circumstances of any individual citizen; instead, this determination will be made on a class-wide basis by analyzing the constitutional provisions at issue. Making these determinations for the Class and Sub-Class will be no more complicated than making them in the context of a single plaintiff's claim. The sole individual issue is the amount of damages suffered by each Class and Sub-Class member – and damage determinations do not bar class certification where the liability determinations are class-wide.

Indeed, there is no realistic way for this case to proceed other than as a class action. The individual claims of prospective Class and Sub-Class members are, in general, too small to justify the prosecution of separate actions. For the most part, these drivers do not even realize the unfair nature of Defendants' tolling policies and thus, are not in a position to consider bringing individual cases. Even if such cases were brought, they would substantially burden our judicial system and create the risk of inconsistent adjudications. Ultimately, the determination of Defendants' liability (if any) to the Class and Sub-Class will rest on the resolution of common issues of fact and common questions of law. A class action is the only sensible option.[2]

## II. <u>STATEMENT OF FACTS</u>

Defendant New York State Thruway Authority ("NYSTA") is a public benefit corporation organized and existing under the charter of the State of New York, and is charged with managing transportation facilities in the State of New York. Among other facilities, the NYSTA operates the South Grand Island Bridge and the North Grand Island Bridge (jointly,

---

[2] Notably, in a similar case pending in the District of Rhode Island, the defendants therein did not oppose class certification at all, in fact, they agreed to it. *See, Cohen v. Rhode Island Turnpike And Bridge Auth.*, C.A. No. 09-1535 (D.R.I. Apr. 29, 2009); a copy of the Order is attached as Exhibit A to the accompanying Declaration of Seth R. Lesser ("Lesser Dec.").

"Grand Island Bridge"), and vehicle tolls on the Grand Island Bridge are collected by and the property of the NYSTA. Vehicle toll policies concerning the Grand Island Bridge are controlled by Defendant NYSTA. The NYSTA is a self-supported toll facility, and an estimated one-third of all vehicles using the New York Thruway are out-of-state motorists. *See* "Thruway Fact Book" at www.nysthruway.gov/about/factbook/index.html#WhyTolls, a copy of which is attached as Exhibit B to Lesser Dec.[3]

Under the alleged discriminatory policies of the NYSTA, the full E-ZPass toll rate for two-axle passenger vehicles (classified by Defendants as "2L") crossing the Grand Island Bridge is currently $1.00, and the commuter toll rate is $0.28; however, residents of Grand Island have been accorded a preferential rate of $0.09.[4] *See* NYSTA Toll Rates available on Defendant NYSTA's website at www.nysthruway.gov/ezpass/discount.html, a copy of which is attached as Exhibit D to Lesser Dec. The residential discount is available only to Grand Island residents, as evidenced by their vehicle registrations or other proof of residency. *Id.*

## III. <u>ARGUMENT</u>

In this Circuit, in reviewing a motion under Rule 23, the court must conduct a "rigorous analysis to determine whether the elements of Rule 23 have been satisfied." *Heerwagen v. Clear Channel Communs.*, 435 F.3d 219, 225 (2d Cir. 2006) (quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161). As to each requirement of Rule 23, the court must make a mixed finding of fact and law. *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 49 (2d Cir. 2006).

---

[3] In 2008, the South and North Grand Island Bridges carried almost 23 million total vehicles and generated close to $17 million in toll revenue. *See* New York State Thruway Authority 2008 Revenue & Trips, South and North Grand Island Bridges, attached as Exhibit C to Lesser Dec.

[4] The Thruway Grand Island Commuter Plan and the Thruway Grand Island Resident Discount Plan can only be obtained with a valid E-ZPass account. E-ZPass is a toll collection system whereby tolls are either pre-paid or post-paid depending on the vehicle and account types. A tag mounted on the vehicle interacts with computers and the appropriate toll is calculated as the vehicle passes through the Toll Plaza. E-ZPass customers, passenger and commercial vehicles, receive a discount on Thruway tolls. *See* Thruway Fact Book on NYSTA's website at: http://www.thruway.ny.gov/about/factbook/index.html#E-ZPass, attached as Exhibit B to Lesser Dec.

However, the court need inquire into the merits of the claims only insofar as is necessary to find that Rule 23's requirements have been satisfied. *Id.* at 53.

Although formal Rule 23 analysis requires assessing the four prerequisites to certification found in Rule 23(a) – numerosity, commonality, typicality and adequacy – the 23(a) inquiry turns on the existence and extent of common issues of fact and common legal theories. Commonality and typicality are both intended "to ensure that maintenance of a class action is economical and that the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Sufficient congruence of factual issues and legal theories not only promotes efficiency, but also due process, by aligning the interests of the class representatives with those of the represented class members.

Rule 23 also requires that at least one provision of 23(b) apply to the litigation. Here, Plaintiffs move for certification under Fed. R. Civ. P. 23(b)(2) or, in the alternative, Fed. R. Civ. P. 23(b)(3), or a hybrid of the two. Rule 23(b)(2) certification is appropriate where the defendants "have acted or failed to act on grounds generally applicable to the class," and was written with civil rights cases in mind. *See* Advisory Committee Note to 1966 Amendment, Fed. R. Civ. P. 23(b)(2). In contrast, Rule 23(b)(3) explicitly requires a court to evaluate the relationship between common and individualized issues, permitting class certification when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). While a court must evaluate important nuances related to each of the 23(a)

requirements and 23(b) options, the fundamental question that a request for class certification raises is the extent to which common questions justify class treatment.

Rule 23 is a flexible instrument that gives courts many options in deciding how and whether to certify a class under Rule 23(b). *See, e.g.*, *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 162 n.7 (2d Cir. 2001). In addition to the four primary options presented by Rule 23(b)(1)(A), (b)(1)(B), (b)(2), and (b)(3), subsections (c) and (d) of the Rule grant courts discretion to certify classes as to certain issues, to certify a (b)(2) class with the right to notice and opt-out, to bifurcate the proceedings and certify initially only with respect to liability, and to grant hybrid certification using (b)(2) for injunctive and declaratory relief and (b)(3) for damages. *See id.*

As the Second Circuit has stated, Rule 23 should be given a "liberal rather than restrictive construction and courts are to adopt a standard of flexibility." *Marisol A.*, 126 F.3d at 377. This general approach to Rule 23 was exemplified by the court's ruling in *Robinson*, 267 F.3d 147. In *Robinson*, the Second Circuit articulated an "ad hoc" standard that preserved the discretion of the district court judge to utilize Rule 23 as appropriate under the facts and circumstances of each case. *Id.* at 164. Here, where common questions of law and fact form the core of the litigation, trying these common claims in a single forum maximizes efficiency. By allowing individuals who may be unable to secure representation and litigate individually to band their claims together, it also maximizes fairness. Accordingly, for the reasons discussed below, Plaintiffs seek to certify the Class and Sub-Class set out above under Rule 23 of the Federal Rules of Civil Procedure for asserted violations of the United States and New York Constitutions.

### A. The Requirements Of Rule 23(a) Are Satisfied

**1. The Members of the Class and Sub-Class Are So Numerous That Joinder of All Members Is Impracticable**

Rule 23 provides that the class must be "so numerous that joinder of all members is impracticable," although impracticable does not mean impossible. *See, e.g., In re NASDAQ Market Makers Antitrust Litig.*, 169 F.R.D. 493, 508-09 (S.D.N.Y. 1996) (noting that "[i]mpracticability means difficulty or inconvenience of joinder; the rule does not require impossibility of joinder") (citations omitted). Here, joinder would not only be impracticable, it would be all but impossible.

Although the exact sizes of the proposed Class and Sub-Class are not known, the total number of New York E-ZPass Service Center users who do not benefit from the resident discount program is indubitably significant, which is what matters for the present motion.[5] For example, in 2008, a total of 22,648,185 vehicles paid a toll to use the Grand Island Bridge, averaging approximately 435,500 vehicles per week. *See* Exhibit C to Lesser Dec. Of those 22,648,185 vehicles, only 4,347,822 benefited from the residential discount afforded to Grand Island residents (about 19% of all vehicles); the remaining 18,300,363 vehicles (approximately 81% of all vehicles) were not entitled to the residential discount. *Id.* Thus, the proposed Class and Sub-class are clearly sufficiently numerous to make joinder impracticable. *See Eldred v. Comforce Corp.*, 2010 U.S. Dist. LEXIS 18260, *43 (E.D.N.Y. March 2, 2010) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members.").

---

[5] In its prior ruling in the instant case, the Second Circuit stated: "[a]lthough we are not aware of the precise number of potential plaintiffs, *we are confident* that neither the number of prospective class members nor the cumulative difference between the tolls they paid and those paid by Grand Island residents is negligible." *Selevan v. N.Y. Thruway Auth.,* 584 F.3d 82, 96 (2d Cir. 2009) (emphasis added).

The numerosity of the Class and Sub-Class cannot be disputed here; indeed, it is a matter of common sense. *Thompson v. Linvatec Corp.,* 2007 U.S. Dist. LEXIS 37711, *14 (N.D.N.Y. May 22, 2007) (court may make "common sense assumptions" to support a finding of numerosity) (internal citation omitted); Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 3:3, at 225 (4th ed. 2002) ("a common sense approach is contemplated by Rule 23").

**2. There are Questions of Law and Fact Common to Plaintiffs and the Class and Sub-Class**

Plaintiffs' situations are not unique but rather, their personal claims present issues of fact and law common to that of the Class and Sub-Class members. Stated directly, there are tens of thousands of other drivers who cross the Grand Island Bridge who do benefit from the resident discounts.

"The commonality requirement is met if there is a common question of law or fact shared by the class." *Brown v. Kelly,* 609 F.3d 467, 475 (2d Cir. 2010); Fed. R. Civ. P. 23(a)(2). Here, resolution of Plaintiffs' claims would be the same as any other member of the Class and Sub-Class. Thus, any litigation against Defendants for claims arising out of the resident discount program would, almost perforce, involve, at the very least, the following questions of fact and law:

- whether the resident discount program violates the Commerce Clause of the United States Constitution;
- whether the resident discount program violates the Privileges or Immunities Clause of the United States Constitution;
- whether the resident discount program violates the Equal Protection Clause of the United States Constitution;

- whether the resident discount program violates Art. 1, § 11 of the New York State Constitution;
- whether the Defendants were unjustly enriched as a result of actions in violation of the United States and New York constitutions;
- whether the members of the proposed Class and Sub-Class have a right to have such money returned to them, in whole or part; and,
- whether injunctive or declaratory relief is warranted.

These are archetypically common issues warranting class-wide treatment. *Falcon*, *supra*, 457 U.S. at 156, 158 n.13 (1982) ("Class relief is peculiarly appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class . . . .").

**3. Plaintiffs' Claims Are Typical of the Classes They Seek to Represent**

Rule 23's typicality requirement is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson*, *supra*, 267 F.3d at 155 (quotation omitted); *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 141 (2d Cir. 2001); *Dura-Bilt Corp. v. Chase Manhattan Bank*, 89 F.R.D. 87, 89 (S.D.N.Y. 1981).

The foregoing discussion concerning commonality demonstrates that typicality is likewise present, which is not surprising since the typicality requirement often "tend[s] to merge" with the commonality requirement, *Falcon*, *supra*, 457 U.S. at 157, n. 13, and a finding of commonality often will support a finding of typicality. *See, e.g., Weber v. Align Technology, Inc.,* 2010 U.S. Dist. LEXIS 54187, *13 (N.D.N.Y. June 2, 2010). The core course of events at

issue and the same legal theories that Plaintiffs have been advancing would be those advanced by any individual claimant in the Class or Sub-Class.[6] Typicality is therefore present.

**4. Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Interests of the Class**

Rule 23(a)(4) requires plaintiffs to demonstrate that the proposed action will "fairly and adequately protect the interests of the class." Adequacy of representation is measured by two standards – "(1) absence of conflict and (2) assurance of vigorous prosecution." *In re Joint E. & S. Dist. Asbestos Litig*., 78 F.3d 764, 778 (2d Cir. 1996); *Fleischman v. Albany Medical Center,* 2008 U.S. Dist. LEXIS 57188, *11 (N.D.N.Y. July 28, 2008). As to the first standard, the rule requires that the named plaintiffs must lack antagonistic or conflicting interests with the absent class members. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d. 285, 291 (2d Cir. 1992). No showing of antagonism or conflict could be made here—to the contrary, Plaintiffs' claims are coextensive with those of the other Class and Sub-Class members.[7] They all did not receive the benefit of any resident toll program. Plaintiffs will have to prove the same United States constitutional violations that the other Class and Sub-Class members would have to prove to establish Defendants' liability for the claims alleged in the Second Amended Complaint.

As to the second element – vigorous representation – the representatives' attorneys must be "qualified, experienced and generally able to conduct litigation." *Thompson*, 2007 U.S. Dist. LEXIS 37711, *21. Plaintiffs and their counsel have already shown themselves ready and fully

---

[6] While Defendants may well point to whatever differences it can hypothecate between Plaintiffs' claims and those of other Class and Sub-Class members, it is hornbook law that "[f]actual differences will not render a claim [of a proposed class representative] atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." 1 H. Newberg, *Newberg on Class Actions* § 3.15 at 335 (4th ed. 2002).

[7] All Plaintiffs have claims that are coextensive with those of the Class; Sullivan, Talarico and Taub, as New York State residents, have claims that are coextensive with those of the Sub-Class.

able to prosecute this lawsuit in a vigorous and competent manner. Plaintiffs have spent substantial time and effort in this litigation by, amongst other things, appealing the dismissal of Plaintiffs' complaint to the Second Circuit. Moreover, Plaintiffs have selected counsel experienced in complex class action litigation. *See* Firm Resumes, attached as Exhibit E to Lesser Dec.

Accordingly, the Court should find that the named Plaintiffs, represented by experienced counsel, will fairly and adequately protect the interests of the Class and Sub-Class they propose to represent.

### B. The Plaintiffs Meet the Standards For Class Certification Under Rule 23(b)(2)

Once the four requirements of Rule 23(a) are met, Rule 23(b) requires the Court to determine the type of class action that should be certified. The Class should be certified under both Rule 23(b)(2) and Rule 23(b)(3) in this action.

Rule 23(b)(2) certification is appropriate where:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed. R. Civ. P. 23(b)(2). A court may certify a class as long as at least one 23(b) requirement is met. Fed. R. Civ. P. 23(b); *Consol. Rail Corp.*, 47 F.3d at 484. "A Rule 23(b)(2) class need not be defined as precisely as a Rule 23(b)(3) class, as Rule 23(b)(2) does not provide for monetary or individualized relief, and does not require notice to allow class members to opt out." *Finch v. N.Y. State Office of Children & Family Servs*., 252 F.R.D. 192, 198 (S.D.N.Y. 2008); *Charrons v. Pinnacle Group NY LLC*, 2010 U.S. Dist. LEXIS 42327, *14 (S.D.N.Y. Apr. 27, 2010).

In the Second Circuit, the Rule 23(b)(2) analysis is set forth in *Robinson*;

> (b)(2) certification is appropriate in light of the relative importance of the remedies sought, given all of the facts and circumstances of the case, and the Court may allow (b)(2) certification if it finds in its informed, sound judicial discretion that (1) the positive weight or value to the plaintiffs of the injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claimed, and (2) class treatment would be efficient and manageable, thereby achieving an appreciable measure of judicial economy.
>
> In making this determination, the court should, at a minimum satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits. Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery.

267 F.3d at 164 (quotations and citations omitted).

This case meets these criteria. The heart of the case, as already discussed, arises from the discriminatory and unconstitutional resident toll program in effect at Grand Island Bridge. Those who do not live in the favored area of Grand Island, New York are required to pay more for the use of these bridges for no constitutionally-permissible reason.

This is particularly so given the hurdles and costs class members would face in bringing individual actions and the difficulties in proof they would face (not to mention, their probable lack of knowledge as to injury in the first place). Given its constitutional dimensions, this case is markedly different from a personal injury or product defect class action where significant individual compensatory damage claims could predominate and reasonable class members might well wish to pursue such claims. *See, e.g.*, *In re Rezulin Prods. Liability Litig.*, 210 F.R.D. 61, 73-74 (S.D.N.Y. 2002) (medical monitoring claims arising from pharmaceutical drug ingestion would not be "cohesive"). Here, the people in the Class and Sub-Class effectively possess a

"group" claim, not individualized claims. *See, e.g.*, *Robinson*, 267 F.3d at 162 ("The (b)(2) class action is intended for cases where broad, class wide injunctive or declaratory relief is necessary to redress a group wide injury.").[8]

**C. The Plaintiffs Meet the Standards For Class Certification Under Rule 23(b)(3)**

The Class and Sub-Class should also be certified under Fed. R. Civ. P. 23(b)(3), which requires plaintiffs to show that "questions of law or fact common to class members predominate over any questions affecting only individual members . . . ."

**1. Common Questions Predominate**

"The Rule 23(b)(3) predominance inquiry tests whether classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/Mastermoney Antitrust Litig*., 280 F.3d 124, 136 (2d Cir. 2001), *abrogated on other grounds by In re IPO,* 471 F.3d 24.

In this case involving many thousands of class members, common legal issues will predominate over any issues affecting only individual members. In fact, it is submitted that there are *no* individual legal issues, and any factual disputes will be *de minimus*. These common legal issues, simply stated, involve the Class's and Subclass's legal claims that Defendants' policies violate the United States Constitution's Commerce Clause, Art. I, § 8, Cl.3 (specifically, the "Dormant Commerce Clause"); the Privileges or Immunities Clause, Amend. XIV, §1, Cl. 2; and

[8] In fact, *Robinson* was an employment discrimination case. A victim of racial discrimination (as was the case in *Robinson*) who did not, for example, get a promotion, would probably have a greater interest in his or her own individual damages than would the overwhelming majority of the Class here.

the Equal Protection Clause, Amend. XIV, § 1, Cl. 4, as well as the Sub-Class's additional legal claim that Defendants' policies violate the New York State Constitution's Equal Protection Clause.

As is demonstrated in the Second Circuit's decision in this case, the predominant issues in this lawsuit are ones concerning constitutional law and are not peculiar to individuals. *See Selevan,* 584 F.3d at 102 ("On remand, the District Court shall determine whether the toll policy implicates the right to travel in the context discussed in *Evansville* and, if so, the District Court shall apply strict scrutiny. If, however, the District Court finds that the toll is merely a 'minor restriction on travel' that does not amount to a denial of a fundamental right, then the District Court shall apply the *Northwest Airlines* test to determine if the toll discriminates against interstate commerce.") (citations omitted). Indeed, regardless of the Class and Sub-Class members' individual circumstances, their claims arise from a uniform course of conduct by Defendants that affects each Class and Sub-Class member in the same way - - they are all required to pay higher tolls to cross the Grand Island Bridge than those provided a resident discount. The only potential individual issue is damages, which courts have uniformly held do not defeat class certification. *Jermyn v. Best Buy Stores*, L.P., 256 F.R.D. 418, 436-37 (S.D.N.Y. 2009); *see* also *Macarz v. Transworld Systems, Inc.,* 193 F.R.D. 46, 50 (D. Conn. 2000) ("[D]ifferences in damages are insufficient to preclude class certification"). Thus, common questions clearly predominate over individual ones raised by the claims asserted here.

**2. A Class Action Is A Superior – Indeed, The Only – Method Of Resolving These Claims**

Fed. R. Civ. P. 23(b)(3) also requires the Court to find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Plainly, a class action is the most "fair and efficient" method to resolve this controversy given the number of

Class and Sub-Class members injured by Defendants' actions. The words of *In re NASDAQ Market-Makers Antitrust Litigation* apply no less here than in the antitrust setting of that decision:

> Given the number of class members injured by Defendant's conspiracy, a class action is not only the most efficient and convenient method to resolve this controversy, it is the only "fair" and "efficient" means to adjudicate this controversy. Multiple lawsuits would be costly and inefficient, and the exclusion of class members who cannot afford separate representation would be neither "fair" nor an "adjudication" of their claims. Moreover, although a large number of individuals may have been injured, no one person may have been damaged to a degree which would induce him to institute litigation solely on his own behalf.

169 F.R.D. at 527. Rule 23(b)(3) specifies four factors to be considered in assessing the superiority of a class action in the circumstances. Each of these factors is met here.

**a) The Interest of Class Members in Individually Controlling the Prosecution of Separate Actions**

Here, Class and Sub-Class members' interests in individually controlling separate actions are minimal. While the aggregate damages of the Class and Sub-Class are significant, the damages of each individual Class and Sub-Class member are too small for them to bring individual lawsuits. Further, given the expense of securing counsel and pursuing claims separately, class members would have little interest in maintaining personal actions. *See Johns v. DeLeonardis*, 145 F.R.D. 480, 485 (N.D. Ill. 1992).

**b) The Extent and Nature of any Litigation Concerning the Controversy Already Commenced by Members of the Class and Sub-Class and the Desirability of Proceeding in the Northern District of New York**

The second and third factors – "the extent and nature of any litigation concerning the controversy already commenced" by members of the class, and the desirability of concentrating the litigation of the claims in this Court – also support proceeding with this action. As of this

date, Plaintiffs are unaware of any other lawsuit filed against Defendants seeking the same relief.[9] Additionally, the Defendants' principal place of business is within this District, as are the material witnesses and the relevant documents.

**c) The Difficulties of Managing this Class Action**

The final factor - "the difficulties likely to be encountered in the management of a class action" - also militates in favor of granting Plaintiffs' motion for class certification. Fed. R. Civ. P. 23(b)(3)(D). Management of this case as a class action would not impose such difficulty that individual actions would be a better way of resolving this controversy. A class action will save enormous litigation costs for all parties and allow them to efficiently prosecute their claims and any defenses. *See, e.g.*, *Jermyn*, 256 F.R.D. at 436. Whatever complexities may arise in handling the claims in a single class action are minor compared to the alternative. Further, the "denial of class certification because of suspected manageability problems is disfavored among the courts because refusing to certify a class action on the basis of vaguely perceived manageability obstacles is acting counter to the policy behind Rule 23 and because that court is discounting unduly its power and creativity in dealing with a class action flexibly as difficulties arise." *In re NASDAQ Market Makers Antitrust Litig.*, 169 F.R.D. at 528. "[D]ifficulties in management are of significance only if they make the class action a less 'fair and efficient' method of adjudication than other available techniques." *Id.* at 529. "If insurmountable management problems were to develop at any point, class certification can be revisited at any time under Rule 23(c)(1)." *Id.*

[9] Plaintiffs' counsel has brought a similar, though non-identical, suit against a different set of Defendants, including a subsidiary of the Metropolitan Transportation Authority, for an unconstitutional residency-based toll discount program for three New York City bridges. That case, and a motion for class certification in it, is pending in the United States District Court for the Southern District of New York.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion for class certification pursuant to Rule 23(c) for an order i) certifying this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3); (ii) certifying the Class and Sub-Class; (iii) appointing Plaintiffs Selevan, Talarico, Taub and Rubin as Class Representatives of the Class; (iv) appointing Plaintiffs Selevan, Talarico, and Taub as Class Representatives of the Sub-Class; and (v) appointing Plaintiffs' Counsel as Counsel for the Class and Sub-Class.

Dated: Rye Brook, New York
February 1, 2011

Respectfully submitted,

**KLAFTER OLSEN & LESSER LLP**

By: /s/ Seth Lesser

Seth R. Lesser
Fran L. Rudich
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
(914) 934-9200

-and-

Harley J. Schnall
**LAW OFFICE OF HARLEY J. SCHNALL**
711 West End Avenue
New York, New York 10025
(212) 678-6546

*Attorneys for Plaintiffs*