UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ROBERT SELEVAN, ANNE RUBIN, DAVID
TALARICO AND SAMUEL TAUB, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED,

06-CV-0291

GLS/DRH

*Plaintiffs,*

-against-

NEW YORK THRUWAY AUTHORITY; AND JOHN L.
BUONO, INDIVIDUALLY AND AS CHIEF
EXECUTIVE AND CHAIRMAN OF THE NEW YORK
THRUWAY AUTHORITY,

*Defendants.*

---

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CERTIFICATION OF A CLASS

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

Roger W. Kinsey
Assistant Attorney General, of Counsel
Bar Roll No. 508171
Telephone: (518) 473-6288
Fax: (518) 473-1572 (Not for service of papers)

Date: March 17, 2011

## Table of Contents

Preliminary Statement ... 1

Statement of the Case ... 2

Point I

    Plaintiffs have failed to comply with FRCP 23(c)(1) and N.D.N.Y.L.R. 23.2 and the motion of certification must be denied. ... 2

Conclusion ... 8

**Preliminary Statement**

Plaintiffs brought this action pursuant to 42 U.S.C. § 1983 on behalf of themselves and others similarly situated challenging the New York State Thruway Authority and Chairman John L. Buono's ("Thruway Authority" or "Defendants") Grand Island Resident discount plan for the Grand Island Bridge. Plaintiffs, non-residents of Grand Island, sued the Thruway Authority and Mr. Buono in his personal and official capacity as Chairman of the Thruway Authority, claiming that the program violates the Commerce Clause, the Equal Protection Clause, and the Privileges and Immunities Clause of the United States Constitution, as well as the New York State Constitution. Plaintiffs sought, along with damages, abolition of the discount to Grand Island residents. Defendants moved to dismiss urging that plaintiffs lack standing to challenge the toll plan, and that the reduced fare plan is constitutional.

By Decision and Order dated January 18, 2007, the United States District Court for the Northern District of New York dismissed the action. Plaintiffs appealed and, by decision dated October 15, 2009, the United States Court of Appeals for the Second Circuit ("Second Circuit") vacated in part and remanded the earlier decision to the district court. Specifically, the Second Circuit remanded the question of whether or not the Thruway Authority acted as a "market participant" and not as a government entity in regulating interstate commerce. Additionally, the Court remanded the analysis of the dormant Commerce Clause and right to travel claims under the three-factor test set forth by the Supreme Court in <u>Northwest Airlines, Inc., v. County of Kent</u>, 510 U.S. 355, 369 (1994).

Plaintiffs have filed a motion for certification as a class. Discovery has now closed and defendants have moved for summary judgment pursuant to FRCP 56 and oppose class certification.

## Statement of the Case

For the sake of brevity, defendants respectfully refer the Court to the statement of facts included in defendants' motion for summary judgment.

## POINT I

## PLAINTIFFS HAVE FAILED TO COMPLY WITH FRCP 23(C)(1) AND N.D.N.Y.L.R. 23.2 AND THE MOTION FOR CERTIFICATION MUST BE DENIED.

Federal Rules of Civil Procedure 23(c)(1) and the Local Rules of the Northern District of New York require that motions for **class certification** be filed "[a]s soon as **practicable**" after the action is filed." Bruce v. County of Rensselaer, 2003 WL 22436281 *2 (N.D.N.Y.2003) (emphasis in the original). Rule 23 sets forth the requirements that must be satisfied before a class action may be maintained. Fed. R. Civ. P. 23. Specifically, Rule 23(a) sets forth four requirements for a class action to proceed: (1) numerosity of parties; (2) commonality of legal and factual issues; (3) typicality of claims and defenses of the class representatives; and (4) adequacy of representation. Fed. R. Civ. P. 23(a); General Tele. Co. v. EEOC, 446 U.S. 318, 330 (1980). All four of the Rule 23(a) requirements must be met for a court to certify a class. Id. In addition, in order to be certified, the proposed class action must fit within one or more of the three categories of class actions described in Rule 23(b). LaFlamme v. Carpenters Local #370 Pension Plan, 212 F.R.D. 448, 451 (N.D.N.Y. 2003)

In the present case, some five years have passed from the initial filing of the case until the Motion for Certification of Class was filed. Additionally, the scheduling order issued on February 25, 2010, required joinder of parties and amendment of pleading before April 1, 2010. Docket 40. Discovery was ordered to end on December 1, 2010. Bruce v. County of Rensselaer, 2003 WL 22436281 *2 . In the joint case management plan dated February 23, 2010, plaintiffs promised to move for class certification before the end of discovery. Docket 38, ¶ 15. Clearly, they did not comply with that commitment. Likewise, plaintiffs failed to secure an expert, depose Authority personal or offer any basis for their claims, other than personal anecdotal claims. Inexplicably, plaintiffs waited until the last day for dispositive motions to file a Motion for Class Certification. Clearly, the filing does not comport with the dictates of the FRCP or local rules and should be denied.

Even if the filing is deemed timely, the Motion should be denied. There are no damages attributable to any individual defendant who may be implicated because qualified immunity exists for individuals. Given the procedural history, the Court remanded the analysis of the dormant Commerce Clause and right to travel claims under the three-factor test set forth by the Supreme Court in Northwest Airlines, Inc., v. County of Kent, 510 U.S. 355, 369 (1994), a member of the Authority could reasonably believe that the rate was fair and reasonable in light of the other options available to those off the island to get to the other side and because it is reasonable to believe that the Authority was a market participant.

While it is true that the Authority may not enjoy 11th Amendment Immunity since the Authority is a separate and discreet corporate body for purposes of tort action, plaintiffs or the class would have to demonstrate damages sounding in tort in order to receive damages for past conduct. Mancuso v. New York State Thruway Authority, 909 F. Supp. 133, 135 (S.D.N.Y.

3

1995); Zeinder v. Wulforst, 197 F. Supp. 23 (E.D.N.Y. 1961); see also Matheson v. New York State Thruway Authority, 22 Misc. 2d 410 (1959) reversed on other grounds, appeal dismissed 11 A.D. 2d 782. It is noteworthy that no claim of damages for past conduct has been quantified and no expert testimony addressing monetary damages has been proffered. Indeed, the present posture of the case appears to support the argument that only prospective relief is sought.

In this light, formation of a class is unnecessary to insure a future remedy. If plaintiffs are successful as against the Authority, the prospective injunctive relief would be to fix the rate scheme in the future. Clearly, in that case, should plaintiffs or anyone else cross the bridge after the remedy is ordered, all would benefit from the relief ordered regardless of class status. Simply put, there is no need for class action since if plaintiffs are successful, all future drivers would benefit regardless of class status.

While district courts within the Second Circuit are afforded substantial leeway in deciding issues of class certification, see Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 162 (2d Cir. 2001), courts must rigorously inquire whether the requirements of Rule 23 have been satisfied and may find it necessary to "probe behind the pleadings" in order to resolve the certification question. Warren v. Xerox, 2004 U.S.Dist. LEXIS 5115 at *22 (W.D.N.Y. 2004) (quoting General. Tele. Co. of Southwest v. Falcon, 457 U.S. 157, 160 (1982)). "[A] Title VII class action, like any other class action, may only be certified if the trial court is satisfied after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." General Falcon, 457 U.S. at 161. "In the wake of Falcon, courts have been generally strict in their application of the Rule 23(a) criteria." Rossini v. Ogilvy & Mather, Inc., 798 F. 2d 590, 597 (2d Cir. 1986). The movant bears the burden of strictly satisfying the requirements of Rule 23. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997); Caridad v. Metro-North Commuter

4

R.R., 191 F.3d 283, 291 (2d Cir. 1999). In addition, when certification of subclasses is sought, the movant also must establish that the subclasses independently meet the Rule 23 requirements. Ashe v. Board of Elections, 124 F.R.D. 45, 52 (E.D.N.Y. 1989); Rule 23(c)(4) ("When appropriate . . . a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.").

Plaintiffs must prove under Rule 23(a) that the proposed class and sub-classes share common questions of law or fact. Fed. R. Civ. P. 23(a)(2); Robinson, 267 F.3d at 155; LaFlamme v. Carpenters Local 370 pension Plan, 212 F.R.D.448, 453 (N.D.N.Y. 2003). While commonality does not require that all class members make identical claims and arguments, it does require that there be at least a single common issue shared by the class. See Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193, 198 (S.D.N.Y.1992). To satisfy commonality in this case, plaintiffs must assert that there was something about the challenged employment practice that affected all class members in some common fashion. See 5 Moore's Federal Practice, § 23.23(4)(e) (Matthew Bender 3d ed.). The commonality requirement is not met if each class member's claim would necessitate an individualized determination of liability. Id; see, e.g., Morgan v. Metropolitan Dist. Comm., 222 F.R.D. 220, 229-35 (D.Conn. 2004); Universal Calvary Church v. City of New York, 177 F.R.D. 181, 183-84 (S.D.N.Y. 1998); Rubenstein v. Benedictine Hosp., 790 F.Supp. 396, 413-14 (N.D.N.Y. 1992); see also, Webb v. Mereck & Co., Inc., 206 F.R.D. 399, 405-06, 408 (E.D. Pa. 2002).

Typicality "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997)(per curiam); see also Fed. R. Civ. P. 23(a)(3).

While the factual background of each plaintiff need not be the same, the disputed issue of law or fact must occupy "essentially the same degree of centrality to the named plaintiff's claims as to that of other members of the proposed class." Caridad, 191 F.3d at 293 (internal quotations and citation omitted). If, however, the court must make highly fact-specific or individualized determinations in order to establish the defendant's liability to class members, there is no typicality. See Morgan, 222 F.R.D. at 232-35; Webb v. Mereck & Co., Inc., 206 F.R.D. at 408; Bacon, 205 F.R.D. at 482. Likewise, typicality is not present if the class representative's claim is subject to one or more unique defenses that likely will be central to the litigation. Gary Plastic Packaging Corp. v. Merrill Lynch, 903 F. 2d 176, 178-179 (2d Cir. 1990); Bishop v. New York City Dep't of Hous. Pres. & Dev., 141 F.R.D. 229, 238 (S.D.N.Y. 1992). The typicality and commonality requirements tend to merge into one another, so that similar considerations animate analysis of Rule 23(a)(2) and (3). See Falcon, 457 U.S. at 157, n. 13. Plaintiffs do not address how the claims of the named plaintiffs are typical of the class they seek to represent.

Plaintiffs apparently, are basing the class on persons who use EZPass. Plaintiffs' memo pg 6. However, plaintiffs ignore the vast number of individuals, corporations and other entities not included in the EZPass system. Nor do plaintiffs indicate if they are participants in the program.

Grand Island is located in the Niagara River between the United States and Canada, entirely within the border of the United States and New York State. Bryan Declaration ¶ 3. Use of the Grand Island Bridge is not the only method or route by which to travel between New York State and Canada, nor is it the only transit route among communities in the immediate area or in the surrounding Buffalo-Niagara Falls region. Id. The Grand Island Bridge itself is merely located along one of a variety of routes travelers could choose from when crossing the border

6

between Canada and New York State, and does not comprise an actual border crossing at all. Id. Without an alternative method or route to travel from the island to the mainland, residents of Grand Island are essentially held captive and must use the Grand Island Bridge as a means to travel to and from their residences. Id. The Authority's Toll rules and regulations define that commuter and residential discount plans only apply to eligible Class 2L (passenger) vehicles equipped with E-ZPass tags issued to those customers who apply, qualify and enroll in the discount plan. Bryan Declaration ¶ 8. The customer shows proof that the eligible vehicles are held in the name of an individual not constituting a business entity, non-profit, religious, charitable or educational entity as vehicles owned or leased by partnerships, corporations or other business entities are not eligible for discount plans. Id. The residential discount program does not apply to commercial vehicles regardless of whether the vehicles are owned or operated by Grand Island residents, consistent with the Authority's rules and regulations. Id.

Plaintiffs have simply failed to address what commonality they represent. Is it Grand Island commercial interests, people who choose other routes, non-profit, religious, charitable or educational entities, vehicles owned or leased by partnerships, corporations or other business entities or other groups to which they claim commonality? Likewise, plaintiffs have failed to demonstrate that they and any members of these diverse groups share a common complaint.

Plaintiffs must also demonstrate that that the plaintiffs will "fairly and adequately protect the interests of the class." FRCP 23(a)(4). In the present case, plaintiffs have utterly failed to demonstrate the adequacy of their representation. Plaintiffs have failed to proffer any expert reports or analysis prior to the close of discovery, they have failed to depose any employee of the Authority and have failed to differentiate the plaintiffs from the ineligible vehicles constituting a business entity, non-profit, religious, charitable or educational entity as vehicles owned or leased

by partnerships, corporations or other business entities are not eligible for discount plans. Likewise, while plaintiffs include self-described commercial entities, they have failed to address the fact that the residential discount program does not apply to commercial vehicles regardless of whether the vehicles are owned or operated by Grand Island residents. Plaintiffs are unable to establish what the appropriate rate per type of vehicle since they failed to secure any experts, and failed to despose Authority personnel on this topic. Due to this failure, the most plaintiffs are entitled to are nominal damages. In light of this failure, plaintiffs are not appropriate representatives of the class of people supposedly damaged by the alleged violation because as a matter of law they did not do the work necessary to establish what the actual damages are. Likewise, according to the government operations rule, there is no need for a class action for prospective relief. In sum, plaintiffs have indulged in such cursory discovery as to illustrate that they cannot adequately protect the interests of the class.

## CONCLUSION

**FOR THE REASONS SET FORTH ABOVE, DEFENDANTS MOTION SHOULD BE DENIED AND THE COMPLAINT DISMISSED IN ITS ENTIRETY.**

Dated: Albany, New York
        March 17, 2011

>                    ERIC T. SCHNEIDERMAN
>                    Attorney General of the State of New York
>                         Attorney for Defendants
>                    The Capitol
>                    Albany, New York  12224-0341
>                    By: s/ Roger W. Kinsey
>                    Roger W. Kinsey
>                    Assistant Attorney General, of Counsel
>                    Bar Roll No. 508171
>                    Telephone: (518) 473-6388
>                    Fax: (518) 473-1572
>                    Email: Roger.Kinsey@ag.ny.gov

8

To:  Andrew P. Bell, Esq.
     Locks Law Firm, PLLC
     110 E. 55th Street, 12th Floor
     New York, NY 10022
     VIA ECF

     Seth R. Lesser, Esq.
     Locks Law Firm, PLLC
     VIA ECF

     Harley J. Schnall, Esq.
     Law Office of Harley J. Schnall
     711 West End Avenue
     New York, NY 10025
     VIA ECF

Selevan –
Class Cert –

Westlaw

Page 1

Not Reported in F.Supp.2d, 2003 WL 22436281 (N.D.N.Y.)
(Cite as: 2003 WL 22436281 (N.D.N.Y.))

**H**
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Nathaniel BRUCE, et. al., Plaintiffs,
v.
THE COUNTY OF RENSSELAER, Defendants.

No. 02-CV-0847.
Oct. 20, 2003.

In civil litigation, plaintiffs objected to a magistrate judge's denial of their request for an extension of time within which to file a motion for class certification. The District Court, McAvoy, J., held that plaintiffs failed to show good cause for a fourth time extension.

Objections overruled and magistrate's decision affirmed.

West Headnotes

**Federal Civil Procedure 170A ⇌175**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)2 Proceedings
            170Ak175 k. Time for Proceeding and Determination. Most Cited Cases
Plaintiffs failed to show good cause for a fourth extension of time within which to file a motion for class certification; plaintiffs had had more than one year from the filing of the complaint to file a motion for certification, they were placed on specific notice after the third extension that there would be no further extensions of that deadline, and the decision to forego filing the certification motion was a matter of litigation strategy. Fed.R.Civ.P. 23(c)(1).

Law Offices of Elmer Robert Keach, III, Albany NY, for Plaintiffs, Elmer R. Keach, III, of counsel.

O'Connor Yoquinto Law Firm, Troy NY, for Defendants, Thomas J. O'Connor, of counsel.

*MEMORANDUM-DECISION and ORDER*
MCAVOY, J.
I. INTRODUCTION
   *1 Plaintiffs object to the Magistrate Judge's denial of their request for an extension of time within which to file a motion for class certification.

II. FACTS
   Plaintiffs commenced the instant action on June 27, 2002. As it became clear that Plaintiffs wished to proceed as a class action, the Magistrate Judge held a conference on October 22, 2002 establishing deadlines for, among other things, the completion of discovery concerning class certification (March 3, 2003) and the filing of a motion for class certification (April 1, 2003). Dkt. No. 5. On April 7, 2003, after the deadline passed and without any showing of excusable neglect, Plaintiffs requested and were granted an extension of time to file their motion for class certification. Dkt No. 31. On May 19, 2003, the Magistrate Judge held a conference with the parties at which time the deadline for filing the motion for class certification was again extended, this time until August 1, 2003. Dkt. No. 33. On July 24, 2003, Plaintiffs again requested additional time within which to file the motion for class certification. This request was granted and Plaintiffs were given until September 1, 2003. Dkt. No. 39. During the telephone conference and in the ensuing Order, "Plaintiffs were advised ... that no further extensions of this deadline would be granted." *Id*. Because September 1, 2003 fell on a legal holiday, the filing deadline was extended by operation of law until September 2, 2003. Fed.R.Civ.P. 6(a).

By letter dated September 2, 2003, at approximately 1:30 p.m.,[FN1] Plaintiffs requested another adjournment of the deadline for filing the motion for class certification. Dkt. No. 44. The purported reason for the extension request was that the parties

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22436281 (N.D.N.Y.)
(Cite as: 2003 WL 22436281 (N.D.N.Y.))

Page 2

wished to explore the possibilities of settlement before filing a motion for class certification. In the letter, Plaintiffs wrote that they

> FN1. The letter was faxed to Magistrate Judge Homer. This timing information is taken from the header on Plaintiff's counsel's fax. The letter was faxed a mere three and one-half hours before the motion was required to be filed.

understand that the Court has previously ordered that the present deadline would be the final deadline for the filing of such papers, and ask the Court's indulgence given these very recent developments and the possibility of resolving this litigation. Should the Court not be inclined to grant such a request, counsel requests that the Court immediately telephone counsel so the certification papers can be filed as soon as practicable.

The Magistrate Judge denied the request for an extension of time and telephoned Attorney Keach to inform him of the decision. On September 3, 2003, Plaintiffs requested a telephone conference with the Magistrate Judge, which was held that same day. At that time, Plaintiffs requested that the Magistrate Judge reconsider the order denying the request for an extension of time. The request was denied. Dkt. No. 46. Plaintiffs also apparently represented that the motion papers were ready to be filed and requested to file their papers one day late because "Plaintiffs had learned of the denial after the close of business on the date of the expiration of the deadline." Dkt. No. 50 at ¶ 11. That request also was denied. Plaintiffs now object to the denial of their motion for an extension of the deadlines.

III. DISCUSSION

a. *Plaintiffs Had Adequate Notice of the Deadline and Cannot Claim Surprise*

\*2 Magistate Judge Homer's July 25, 2003 Order is clear and unmistakable. Dkt No. 33. It sets forth in no uncertain terms that the motion had to be filed on September 1, 2003 [FN2] and that "no further extensions of this deadline [to file a motion for class certification] would be granted." There is nothing ambiguous or uncertain about this order. Accordingly, Plaintiffs had ample notice of the deadline. Further, the July 25 Order left no room for discussion. It, thus, should come to no surprise to Plaintiffs that their fourth request for an extension of that deadline was denied.

> FN2. September 2 because of Rule 6.

b. *Plaintiffs Failed to Comply with Rule 23(c)(1)*

Fed.R.Civ.P. 23(c)(1) and N.D.N.Y.L.R. 23.2 require that motions for **class certification** be filed "[a]s soon as **practicable** " after the action is filed. The phrase "as soon as practicable" does not establish a definite time and, thus, is flexible. In this case, however, Plaintiffs were provided with definite times by the Magistrate Judge's scheduling orders. Thus, for all intents and purposes, as far as Plaintiffs were concerned, the date "September 2, 2003" was substituted in for the phrase "as soon as practicable."

The Court has the power to establish reasonable times for the filing of documents. *See Grandson v. Univ. of Minn.*, 272 F.3d 568, 574 (8th Cir.2001), *cert. denied*, 535 U.S. 1054, 122 S.Ct. 1910, 152 L.Ed.2d 820 (2002); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir.2000) (and cases cited therein); *see also Borges v. Our Lady of the Sea Corp.*, 935 F.2d 436, 442-43 (1st Cir.1991); *Flaminio v. Honda Motor Co., Ltd.*, 733 F.2d 463, 472 (7th Cir.1984) ("in this era of crowded district court dockets federal district judges not only may but must exercise strict control over the length of trials, and are therefore entirely within their rights in setting reasonable deadlines in advance and holding the parties to them."). The responsibility and consequence of failing to meet a deadline falls upon the party that missed the deadline. A party takes significant risks when it seeks an extension of a deadline late on the day of the deadline; that is, at the proverbial eleventh hour. The risks include: (1) that the Judge may not be available to entertain the motion; (2) that the Judge may

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22436281 (N.D.N.Y.)
(Cite as: 2003 WL 22436281 (N.D.N.Y.))

Page 3

not be able to adjudicate the motion that same day; (3) that the motion will be denied and, thus, the party will have little or no time to meet the deadline; and (4) that the party will not receive timely notice of a decision and, thus, be unable to meet the deadline.[FN3] The filing of a request for an extension on the final day of the time period does not act as an automatic stay of the deadline, nor does it provide good cause for an extension of the deadline. To the contrary, it is evidence of being remiss in one's duties. Waiting until the proverbial eleventh hour to take action is always risky business, as evidenced by the negative outcome in this case. Here, Plaintiffs failed to comply with the clear deadline for filing the motion for class certification and, as a result, they are now precluded from moving for class certification. *See Grandson,* 272 F.3d at 574; *McCarthy v. Kleindienst,* 741 F.2d 1406 (D.C.Cir.1984); *Burkhalter v. Montgomery Ward & Co., Inc.,* 676 F.2d 291 (8th Cir.1982) (failure to file motion for class certification by the time set by the court justified striking of class allegations); *Walton v. Eaton Corp.,* 563 F.2d 66, 75 n. 11 (3d Cir.1977) (it was not an abuse of discretion to deny a motion for class certification that was untimely under the local rules); *Wilson v. Seven Seventeenth HP Phila. Corp.,* 2001 WL 484193, at *3 (E.D.Pa.2001) (denying class certification where plaintiffs violated court order setting a filing deadline); *Nicolas v. Deposit Guaranty Nat'l Bank,* 182 F.R.D. 226, 235 (S.D.Miss.1998); *Joshlin v. Gannett River States Pub. Corp.,* 152 F.R.D. 577, 579 (E.D.Ark.1993); *Coffin v. Secretary of Health, Education & Welfare,* 400 F.Supp. 953, 956-57 (D.D.C.1975) (refusal to certify class because plaintiff's motion for class action certification was not timely filed pursuant to the local rules); *Walker v. Columbia Univ.,* 62 F.R.D. 63 (S.D.N.Y.1973).

> FN3. The customary procedure for the Court is to serve decisions by mail. Plaintiffs' counsel, Attorney Keach, requested that the Court telephone him as soon as it rendered a decision on the request for an extension of time. It was quite presumptuous for Attorney Keach to request or expect immediate notification of a decision on the motion. If Attorney Keach is anxious about the timing of a decision, he has several options available. The safest and most preferable option is to file the motion well in advance of the deadline. This would give everyone ample time to reduce the previously discussed risks. Another option includes logging onto the Court's PACER system to check the status of the motion.
>
> In any event, someone from Judge Homer's Chambers did notify Attorney Keach that his request for an extension of time was denied. According to Keach's affidavit, "[s]hortly after the close of business, [he] telephoned [his] office voicemail and received a message from Judge Homer's chambers indicating that [the] request for enlargement had been denied." Sept. 13, 2003 Keach Aff. at ¶ 9. It was Attorney Keach's own fault that he was not in his office or otherwise did not make proper arrangements to timely receive Judge Homer's message, particularly in light of the fact that it is he who asked to be immediately notified of the Court's decision.
>
> In connection with the instant objections to the Magistrate Judge's order, Attorney Keach again requested that the Court immediately telephone him with the decision on the motion. It is unclear what the rush is. In any event, that request is emphatically DENIED. It is not the Court's obligation to provide Plaintiff's counsel with super fast notice of its decisions. The Court intends to treat all litigants equally and to adhere to its policies and practices regarding the notice and the service of decisions. Again, Attorney Keach can log on to PACER

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22436281 (N.D.N.Y.)
(Cite as: **2003 WL 22436281 (N.D.N.Y.)**)

Page 4

> through the Court's website for up-to-date information about the Court's docket.

*3 In addition, many courts have recognized that "[a]side from the fact that a delay in moving may violate local rules and/or a court order, failure to move in a timely fashion for certification of a class 'bears strongly on the adequacy of representation that those class members might expect to receive.'" *Wilson*, 2001 WL 484193, at *4 (quoting *East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 405, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)). Here, the adequacy of representation is in serious doubt in light of counsel's disregard of a clear deadline, the Court's directive that there would be no further extensions and his ill-advised decision to seek such improbable relief at the proverbial eleventh hour without taking adequate measures to protect their clients' (or the putative class's) rights,[FN4] and his failure to make appropriate arrangements to receive Judge Homer's call regarding the disposition of the motion for an extension of time.[FN5] *See Walker*, 62 F.R.D. at 64 ("the failure of plaintiffs' attorneys to make a timely motion, despite the clear and unambiguous language of the rule, leads us to the conclusion that they will not 'fairly and adequately protect the interests of the class,' as required by" Rule 23.).

> FN4. For example, counsel could have filed the motion to preserve their clients' rights and later withdrawn the motion if they learned that the Court was inclined to grant an extension of time.

> FN5. This failure is particularly troublesome here where Attorney Keach specifically requested that Judge Homer immediately telephone his office regarding the outcome of the motion.

c. *Plaintiffs Have Not Shown Good Cause for an Extension of Time*
Several factors lead to the conclusion that Plaintiffs have not shown good cause for a fourth extension of time. First, Plaintiffs could have requested the extension on August 29, 2003 and, thus, possibly avoided the predicaments of (1) having the motion denied on the date the motion was due; and/or (2) receiving a copy of the decision after the deadline passed. In his September 2, 2003 letter, Attorney Keach admits that he learned of Defendants' purported interest in settlement negotiations on Friday, August 29, 2003 and that, on that same day, "Defendants suggested that ... Plaintiffs forego service of their class certification ... until such a meeting could be held." Sept. 13, 2003 Keach Aff. at Ex. D. Thus, Plaintiffs could have sought an extension on August 29, 2003.

Second, as previously discussed, Judge Homer was kind enough to grant Attorney Keach's request that his Chambers immediately notify Attorney Keach by telephone of the disposition of the motion for an extension of time. It was Attorney Keach's own fault that he did not make proper arrangements to timely receive the message from Judge Homer so that he could then take proper action in response thereto.

Third, Plaintiffs' attorneys determined, as a matter of litigation strategy, that "it [was] in the best interests of the class to explore settlement prior to filing the motion for certification." *See id.* at ¶ 6 ("Class counsel believed, since their motion papers would reveal damaging information about the management of the Rensselaer County Jail that could potentially put the parties in a more adversarial posture, that delaying the submission of the class certification papers was in the best interests of the proposed class and named Plaintiffs.") Plaintiffs' litigation strategy and the decision to forego the filing of a motion in the hopes of encouraging settlement are not good cause for an extension of time, particularly in light of the Court's interest in maintaining control over its docket, the three prior extensions and the stern warning that there would be no further extensions. *See Wells v. Rockefeller*, 728 F.2d 209, 213-14 (3d Cir.1983); *Whitehead v. Malone*, 2002 WL 849583, at *4 (N.D.Ill.2002) (holding that litig-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 22436281 (N.D.N.Y.)
(Cite as: 2003 WL 22436281 (N.D.N.Y.))

Page 5

ation strategy is not good cause for failing to serve a complaint and summons and will not extend the time for service); *Downing v. American Airlines, Inc.,* 1988 WL 49211 at *1 n. 1 (E.D.N.Y.1988) ("litigation strategy cannot be deemed 'good cause.' "). In *Wells,* for example, the Third Circuit rejected a claim that there was good cause for vacating a default judgment where the defendant allowed the default to occur as a matter of litigation strategy. The court stated that

*4 [Defendant] followed this tactic as a matter of strategy; that being so, he must now live with its consequences.... [Defendant] argues that the default occurred because of his counsel's reasonable error in not anticipating the district court's holding that [his] claims were compulsory counterclaims. However, the decision to gamble against that eventuality does not justify reopening the judgment in the circumstances of this case. [Defendant] could have taken other, more prudent steps. He might, for example, have filed the counterclaim in the eviction suit and awaited a decision by the district court on whether that procedure was proper. He could also have promptly filed his separate suit and moved to consolidate it with the eviction action before the default was taken.... In any event, [defendant's] explanation does not justify his failure to present any semblance of a defense against the suit.... He clearly had the opportunity and the time to file an answer, as well as a counterclaim, as demonstrated by the independent action he filed two weeks before entry of the default judgment. [Defendant] deliberately chose to ignore filing a response and invited a default judgment. The district court properly refused the motion to open the judgment in the circumstances.

*Wells,* 728 F.2d at 213-14.

Here, Plaintiffs were faced with the choice of filing the motion and pursuing settlement negotiations or foregoing the filing of the motion and pursuing settlement negotiations. Understandably, Plaintiffs might have felt that they had a lower probability of settlement if they filed the motion that contained "bad" information concerning Defendants. However, Plaintiffs chose this latter approach at the great risk of being foreclosed from filing a motion for certification.[FN6] Again, Plaintiffs balanced these risks and made a knowing and voluntary strategy choice. Having made that choice, they must now live with the results. *See Wells,* 728 F.2d at 214 (parties must live with the consequences of litigation strategy choices). As previously noted, Plaintiffs could have undertaken more prudent steps such as filing the motion for an extension of time on August 29 or filing the motion for class certification to preserve their rights and later withdrawing the motion if they learned that the Court was inclined to grant an extension of time.

> FN6. The risk was "great" based upon the plain language of the order that no further extensions would be granted.

IV. CONCLUSION

Based on the facts and circumstances of this case, including that Plaintiffs had more than one year from the filing of the Complaint to file a motion for certification, Plaintiffs' received three extensions of the motion filing deadline, Plaintiffs were placed on specific notice that there would be no further extensions of that deadline, Attorney Keach failed to make appropriate arrangements to receive Judge Homer's message concerning the disposition of the motion for an extension of time, and the decision to forego filing the motion was a matter of litigation strategy, it was entirely reasonable for the Magistrate Judge to have denied the request for an extension of time. Thus, the Court finds no error. Even reviewing this matter *de novo,* this Court would have done, and is doing, the same thing.

*5 For the foregoing reasons, Plaintiffs' objections are OVERRULED and the decision of the Magistrate Judge is AFFIRMED.

IT IS SO ORDERED.

N.D.N.Y.,2003.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.