**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ROBERT SELEVAN, ANNE RUBIN,**
**DAVID TALARICO and**
**SAMUEL TAUB,**

                    **Plaintiffs,**         **1:06-cv-291**
                                       **(GLS/DRH)**

           **v.**

**NEW YORK THRUWAY AUTHORITY**
**and JOHN L. BUONO,**

                      **Defendants.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFFS:** | |
| Locks Law Firm PLLC<br>747 Third Avenue<br>37th Floor<br>New York, New York 10017 | ANDREW P. BELL, ESQ. |
| Office of Brian L. Bromberg<br>40 Exchange Place<br>Suite 2010<br>New York, NY 10005 | BRIAN L. BROMBERG, ESQ. |
| Klafter, Olsen Law Firm<br>Rye Brook Office<br>Two International Place<br>Suite 350<br>Rye Brook, NY 10573 | FRAN L. RUDICH, ESQ.<br>SETH R. LESSER, ESQ. |
| Office of Harley J. Schnall<br>711 West End Avenue<br>New York, NY 10025 | HARLEY J. SCHNALL, ESQ. |

**FOR THE DEFENDANTS:**
New York State Office of the	NELSON SHEINGOLD, ESQ.
State Comptroller
110 State Street, 14th Floor
Albany, NY 12236

HON. ERIC T. SCHNEIDERMAN	ROGER W. KINSEY
New York State Attorney General	Assistant Attorney General
Albany Office
The Capitol
Albany, NY 12224

New York State Department of Law	JAMES B. McGOWAN, ESQ.
Albany Office
The Capitol
Albany, NY 12224

**Gary L. Sharpe**
**District Court Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiffs Robert Selevan, Anne Rubin, David Talarico and Samuel Taub[1] commenced this action against defendants New York Thruway Authority (NYTA) and John L. Buono, in his official capacity as Chief Executive Officer and Chairman of the NYTA, asserting claims pursuant to 42 U.S.C. § 1983 for violations of the Commerce Clause, the Privileges

---

[1] The Clerk is directed to correct the docket to reflect that Talarico and Taub are plaintiffs, not defendants.

2

and Immunities and Equal Protection clauses of the Fourteenth Amendment, and Article I of the New York State Constitution. (Am. Compl., Dkt. No. 45.) Pending are defendants' motion for summary judgment and plaintiffs' motions to certify a class and to appoint class counsel. (*See* Dkt. Nos. 48, 49, 73.) For the reasons that follow, defendants' motion is granted, and plaintiffs' motions are denied.

## II. Background[2]

### A. Factual History

Grand Island, New York is located in the Niagara River between the United States and Canada. (Defs.' Statement of Material Facts ("SMF") ¶ 17, Dkt. No. 48, Attach. 4.) With the exception of public transportation or boat, the only means of entering or leaving Grand Island is via the Grand Island Bridge (GIB). (*Id.* ¶ 21.) The GIB is actually comprised of two independent bridges; the northern and southern spans connect Grand Island to Niagara Falls and Tonawanda, New York, respectively. (*Id.* ¶ 18.) Neither span comprises an actual border crossing between the United States and Canada, and use of the GIB is not the only method by which localities to the north and south of Grand Island may access one another.

---

[2] The facts are undisputed unless otherwise noted.

(*Id.* ¶¶ 19-20.)

The GIB is maintained and operated by the NYTA, a public corporation, which sets the bridge's tolling rates. (*Id.* ¶ 5.) In July 1980, the NYTA implemented a discounted tolling rate for residents of Grand Island. (*Id.* ¶ 23.) Individuals who prove that their vehicle is held in the name of a Grand Island resident, and not a "business entity, non-profit, religious, charitable or educational entity," are entitled to a discounted rate of 9 cents per trip (resident rate), as opposed to the standard fare of $1.00 per trip (passenger rate). (*Id.* ¶¶ 25, 30.) The NYTA also offers a discounted fee of 28 cents per trip for non-resident commuters as part of a 20-trip monthly plan (commuter rate).[3] (*Id.* ¶ 30.)

Plaintiffs Robert Selevan and Anne Rubin, both non-residents of Grand Island, paid the passenger rate of $1.00 to traverse the GIB at an unspecified date after March 6, 2000 during a trip through New York and New Jersey. (Am. Compl. ¶¶ 5-6, Dkt. No. 45.) Plaintiffs David Talarico and Samuel Taub, also non-residents of Grand Island, regularly crossed the GIB during the same period, but paid the preferential commuter rate.

---

[3] The passenger and commuter rates have increased slightly during the period relevant to this litigation. (*Id.* ¶ 30.) The parties dispute the exact dates of these increases, but such disagreement is immaterial to the court's analysis. It is undisputed, however, that the resident rate has remained unchanged at 9 cents per trip during the relevant period.

4

(*Id.* ¶¶ 7-8.)

## B.   Procedural History

On May 4, 2006, defendants moved to dismiss this action on multiple grounds, after which plaintiffs Selevan and Rubin filed an Amended Complaint.  (Dkt. Nos. 6, 20.)  In a January 18, 2007 memorandum-decision and order, this court granted defendants' renewed motion and dismissed Selevan and Rubin's Amended Complaint in its entirety.  (Dkt. No. 26.)  On October 15, 2009, the Second Circuit affirmed this court's dismissal of Rubin's claim under the Privilege and Immunities Clause of Article IV, vacated the remainder of the January 18 decision and order, and remanded the case for further proceedings.  *Selevan v. New York Thruway Auth.*, 584 F.3d 82 (2d Cir. 2009).

On April 29, 2010, Selevan and Rubin filed a permissible second Amended Complaint, adding plaintiffs Talarico and Taub.  (Dkt. No. 45.)  Both plaintiffs and defendants filed motions on February 1, 2011; plaintiffs sought to certify the class while defendants brought the instant motion for summary judgment.  (Dkt. Nos. 48, 49.)

## III.   Standard of Review

Summary judgment is appropriate "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). When evaluating the material facts, the court "construes all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in [its] favor." *Amore v. Novarro*, 624 F.3d 522, 529 (2d Cir. 2010). Thus, the movant must demonstrate the absence of genuine issues of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999), a burden it can meet "if [it] can point to an absence of evidence to support an essential element of the nonmoving party's claim," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

If the movant satisfies its burden, the nonmoving party must offer specific evidence showing that a genuine issue of material fact warrants a trial. *See Celotex*, 477 U.S. at 324. "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (citation omitted). Moreover, material disputes

6

must be based on specific facts as reflected in the adverse party's response, by affidavits or as otherwise authorized by Rule 56, *see St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000), and affidavits must be based on personal knowledge, *see Harriscom Svenska, AB v. Harris Corp.*, 3 F.3d 576, 581 (2d Cir. 1993). The bald assertion of some alleged factual dispute will not defeat a properly supported motion. *See Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994) (citation omitted). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). Naturally, reasonable inferences may defeat a summary judgment motion, but only when they are supported by affirmative facts and relevant, admissible evidence. *See* Fed. R. Civ. P. 56(c)(4); *Spinelli v. City of New York*, 579 F.3d 160, 166-67 (2d Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

## IV. Discussion

### A. Dormant Commerce Clause

NYTA and Buono first seek summary judgment as to plaintiffs' claim

7

that the GIB toll structure violates the Commerce Clause. (Dkt. No. 48, Attach. 3 at 4.) The Commerce Clause provides Congress with the power to "regulate Commerce with foreign Nations, and among the several States." U.S. Const. art. I, § 8, cl. 3. This allocation of power was "designed in part to prevent trade barriers that had undermined efforts of the fledgling States to form a cohesive whole following their victory in the Revolution." *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 90 (2d Cir. 2009) (quoting *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 807 (1976)). From this federal grant of regulatory power flows the negative or dormant implication that the Commerce Clause "prohibits state taxation or regulation that discriminates against or unduly burdens interstate commerce and thereby impedes free private trade in the national marketplace." *Selevan*, 584 F.3d at 90 (quoting *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287 (1997)).

    1.    <u>Market Participant Doctrine</u>

NYTA and Buono argue as a threshold matter that the court need not undertake a Commerce Clause analysis because the GIB toll structure is exempt from constitutional scrutiny under the "market participant" doctrine. (Dkt. No. 48, Attach. 3 at 4.) The court is unpersuaded by this argument.

8

The market participant doctrine "differentiates between a State's acting in its distinctive governmental capacity, and a State's acting in the more general capacity of a market participant; only the former is subject to the limitations of the negative Commerce Clause." *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 277 (1988).

NYTA and Buono base their market participant defense largely upon the same grounds that the Second Circuit found unpersuasive at the motion to dismiss stage. (Dkt. No. 48, Attach 3 at 5-8.) In rejecting defendants' arguments on the pleadings, the Second Circuit noted that the Thruway's enabling statute expressly states that the NYTA "shall be regarded as performing a governmental function in carrying out its corporate purpose and in exercising the powers granted by this title." *Selevan*, 584 F.3d at 93 (quoting N.Y. Pub. Auth. Law § 353). This language comports with the Second Circuit's "repeated observation that building and maintaining roads is a core governmental function." *Id.* Additionally, unlike a private actor, the NYTA enjoys the ability to "(1) use or possess any real property or rights in real property acquired by the state . . . (2) avoid holdouts by resorting to eminent domain . . . and (3) issue bonds that are fully and unconditionally guaranteed by the state in order to

9

raise capital to fund road construction and maintenance projects." *Id.* at 93-94 (citing N.Y. Pub. Auth. Law §§ 357, 358, 358-a, 366).

Furthermore, NYTA and Buono again invoke *Endsley v. City of Chicago*, 230 F.3d 276 (7th Cir. 2000), for the proposition that "a state may act in a proprietary capacity as an entrant into the local highway transportation market." (Dkt. No. 48, Attach. 3 at 5-6.) Like the Second Circuit, the court finds this reliance to be misplaced. In *Endsley*, the Seventh Circuit stated that Chicago was a market participant in its operation of a Skyway toll bridge. 230 F.3d at 284. The Second Circuit found this analysis to be non-binding dicta, and instead focused on the fact that plaintiffs in that case "essentially pleaded themselves out of court by noting in their complaint that, since its inception, Chicago . . . operated the bridge as a proprietary enterprise, and not in its governmental capacity." *Selevan*, 584 F.3d at 94 (internal quotations and citations omitted); *See also Cohen v. Rhode Island Tpk. & Bridge Auth.*, 75 F. Supp. 2d 439, 444 (D. R.I. 2011) (declining to adopt the "*Endsley* court's sweeping interpretation of the market participant doctrine.").

Because NYTA and Buono fail to adduce sufficient facts beyond those rejected by the Second Circuit, they are not shielded by the market

10

participant doctrine, and the GIB toll structure must undergo Commerce Clause scrutiny.

    2.    <u>Dormant Commerce Clause Merits</u>

Having determined that defendants are not market participants, the proper inquiry is whether the GIB toll structure violates the Commerce Clause. Per the guidance of the Second Circuit, the lens through which to analyze this question is the three part test articulated in *Northwest Airlines, Inc. v. Cnty. of Kent*, 510 U.S. 355 (1994). Under the *Northwest Airlines* test, a fee is reasonable and constitutionally permissible if it "(1) is based on some fair approximation of use of the facilities, (2) is not excessive in relation to the benefits conferred, and (3) does not discriminate against interstate commerce." *Nw. Airlines, Inc.,* 510 U.S. at 716-17.

During its review of the present dispute on the pleadings, the Second Circuit found that because the GIB toll structure clearly did not discriminate against interstate commerce, this court need only address the first two *Northwest Airlines* factors, unless plaintiffs were given an opportunity to amend their complaint. *Selevan*, 584 F.3d at 98 n.4. While plaintiffs filed a second Amended Complaint on April 26, 2010, they failed to allege new facts sufficient to disturb the Second Circuit's conclusion that the GIB toll

11

structure does not favor any in-state economic interest to the detriment of an out-of-state competitor. *Id.* at 95; (Dkt. No. 44.) Accordingly, the GIB toll structure does not discriminate against interstate commerce.

The inquiry turns, therefore, to whether "the fee supplies a benefit to users of [the GIB] that is at least roughly commensurate with the burden it imposes on them." *Selevan*, 584 F.3d at 97. Specifically, the court must determine whether "the NYTA policy at issue reflects 'rational distinctions among different classes of' motorists using the Bridge" so that all classes of GIB toll-payers remit "some approximation of his or her fair share of the state's cost for maintaining the [GIB]," and "whether the toll charged to non-residents of Grand Island is excessive in relation to the benefit it confers to them." *Id.* at 98. (internal citation omitted) The ultimate determination is one of reasonableness; the correlation between fees paid and benefit conferred "need not be a perfect fit." *Id.* Because of the close relation between these two prongs, they will be considered together. *See Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, 567 F.3d 79, 86 (2d Cir. 2009); *also Cohen v. R.I. Tpk. & Bridge Auth.*, 75 F. Supp.2d 439, 447 (D. R.I. 2011).

The NYTA and Buono argue principally that the lower fees charged to

12

Grand Island residents reflect not only the benefit of traversing the GIB, but also encapsulate the burden borne by residents as a result of their inability to leave Grand Island by vehicle via a non-toll route.  (Dkt. No. 76. at 4.) Plaintiffs argue that the toll structure is an unfair approximation of use because non-Grand Island residents pay significantly more per trip than do beneficiaries of the resident rate and, similarly, that abolishing the resident rate would increase NYTA revenues.  (Dkt. No. 65 at 16-18.)  Neither of these facts, however, are disputed.[4]

Plaintiffs curiously raise no concern that beneficiaries of the commuter rate—which, like the resident rate, consistently comprises approximately twenty percent of annual GIB traffic (Dkt. No. 48, Attach. 2)—also pay significantly less per trip than do passenger rate travelers.  In fact, by adding plaintiffs Talarico and Taub, both of whom benefit from the commuter rate, plaintiffs implicitly admit that certain differentiations between classes of travelers are permissible and that considerations beyond the number of annual passages across the GIB may inform NYTA toll rates.  While the preferential rate of 9 cents per trip may not be a

---

[4] While the parties partake in hypothetical guesswork as to the exact amount of additional revenues that stand to be gained by abolishing the resident rate, such calculations are of little use in determining whether all current users of the GIB pay a fair approximation of their share of costs for maintaining the GIB.

13

precise quantification of the toll bridge-imposed isolation that confronts beneficiaries of the resident rate each time they desire to leave Grand Island, or the residuary effects of nearly 25 million non-resident travelers bisecting their island annually, it reflects a "rational distinction[] among different classes of" motorists.  *Selevan*, 584 F.3d at 97.

As evidence that the commuter and passenger rates exceed the benefits which they confer, Plaintiffs claim that the NYTA has been collecting excess revenues.  (Dkt. No. 65 at 20.)  Specifically, Plaintiffs point to the fact that the NYTA spent approximately $6.9 million in 2005 for maintenance, upkeep, repair and renovation of the Grand Island Bridges while collecting over $13 million in tolls the same year.  (*Id.*)  They further note that, in 2006, the NYTA spent approximately $10.6 million for the same purposes while collecting nearly $15 million in tolls.  (*Id.*)  Plaintiffs fail to mention, however, that between 2006 and 2011, the NYTA allocated over $62 million for nine construction projects on the GIB and related facilities.  (Dkt. No. 66, Attach. H.)  Plaintiffs also omit the fact that tolls—which serve as the only source of revenue for the Thruway system—are used to pay more than $50 million per year to support State Police Troop T, which patrols the Thruway exclusively.  (Dkt. No. 66,

14

Attach. J.)

The New York State Thruway Act grants the NYTA the power to:

"fix and collect such fees . . . for the use of the Thruway system . . . with an adequate margin of safety, to produce sufficient revenue to meet the expense of maintenance and operation and to fulfill the terms of any agreements made with the holders of its notes or bonds."

N.Y. Pub. Auth. Law § 354(8).  Under § 609 of the Authority's General Revenue Bond Resolution, "the Authority has covenanted with Bondholders to fix, charge and collect such tolls, fees and charges for use of the system so that revenues shall at least equal net revenue requirements for each fiscal year."  (Defs.' SMF ¶ 6, Dkt. No. 48, Attach. 4.) In light of the NYTA's obligations to maintain and operate the New York Thruway system, as well as satisfy its Bondholders, it would be unreasonable to expect annual toll revenue to match precisely the amount required to ensure upkeep of the GIB.  Plaintiffs have failed to provide evidence indicating that the NYTA has exceeded the "adequate margin of safety" to which it is entitled under N.Y. Pub. Auth. Law § 354(8). Accordingly, the 28 cents and $1.00 charged per trip under the commuter and passenger plans, respectively, are not excessive in relation to the benefits which they confer; namely access to a well maintained, trooper-

15

patrolled highway which either enables or expedites passengers' travels.

In sum, the NYTA toll structure is reasonable and constitutionally permissible because it "(1) is based on some fair approximation of use of the facilities, (2) is not excessive in relation to the benefits conferred, and (3) does not discriminate against interstate commerce." *Nw. Airlines, Inc.*, 510 U.S. at 716-17. Accordingly, defendants' motion for summary judgment is granted as to plaintiffs' dormant Commerce Clause claim.

## B.  Right to Travel

NYTA and Buono next seek summary judgment as to plaintiffs' claim that the GIB toll structure abridges their right to travel in violation of the Privileges and Immunities and Equal Protection clauses of the Fourteenth Amendment. (Dkt. No. 48, Attach. 3.)[5] Individuals have a fundamental right to both inter and intra-state travel. *Selevan*, 584 F.3d at 100 (citing *Williams v. Town of Greenburgh*, 535 F.3d 71, 75 (2d Cir. 2008)). "A state law implicates the right to travel"—thereby triggering strict scrutiny—"when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of

---

[5] NYTA and Buono do not specifically address the Privileges and Immunities and Commerce Clause claims in their motion for summary judgment, but their request that plaintiffs' second Amended Complaint be dismissed in its entirety implies a desire to seek summary judgment on these issues. (*See* Dkt. No. 48, Attach. 3 at 15.)

16

that right." *Atty. Gen. of New York v. Soto-Lopez*, 476 U.S. 898, 903 (1986) (internal citations omitted).

Here, plaintiffs allege that by charging Grand Island residents a preferential toll rate as opposed to all other travelers, including out-of-state residents, the NYTA and Buono utilized a classification which penalizes the exercise of their right to travel. (Am. Compl. ¶¶ 39-40, Dkt. No. 45.) In analyzing this argument, the Second Circuit determined that the financial burden borne by plaintiffs as a result of the GIB toll structure was merely a minor restriction on their right to travel, not a penalty. *Selevan*, 584 F.3d at 101. Despite the addition of plaintiffs Talarico and Taub, who traverse the GIB frequently, the court agrees.[6]

The Second Circuit, however, left open the possibility that the GIB toll structure may still implicate the right to travel as contemplated by the Supreme Court in *Evansville-Vanderburgh Airport Auth. Dist. v. Delta Airlines*, 405 U.S. 707 (1972). *Selevan*, 584 F.3d at 101-102. In *Evansville*, the Court differentiated between taxes which penalize the right to travel while bearing no relation to a benefit conferred, and fees

---

[6] Talarico and Taub pay the commuter plan rate of 28 cents per trip, which is based on a monthly minimum calculation of 20 trips. (Dkt. No. 66, Attach. C.) This means that if Talarico and Taub made the same 20 trips at the resident rate of 9 cents per trip, they would save $3.40 each month; an amount more akin to a minor restriction than a penalty.

17

"designed only to make the user of state-provided facilities pay a reasonable fee to help defray the costs of their construction and maintenance." *Evansville*, 405 U.S. at 713-14. If the GIB toll structure is deemed to fall under the former class, it is constitutional only if it satisfies strict scrutiny; if it is found to be the latter, the right to travel is not implicated and the fee scheme need only satisfy the aforementioned *Northwest Airlines* test. *Selevan*, 584 F.3d at 101-102.

Because the court already found that the GIB toll structure constitutes a reasonable user fee designed to defray the costs of maintenance and construction to the GIB, strict scrutiny is inappropriate here, and the permissibility of the GIB fee scheme hinges on the application of the *Northwest Airlines* test. For the reasons articulated above, the GIB toll structure does not run afoul of the *Northwest Airlines* standard, and therefore does not violate the Privileges and Immunities Clause of the Fourteenth Amendment or the Equal Protection Clause.[7] Accordingly, NYTA and Buono's motion for summary judgment is granted as to plaintiffs' right to travel claims.

---

[7] Because the Equal Protection Clauses of both the federal and New York Constitutions are coextensive, *Town of Southold v. Town of East Hampton*, 477 F.3d 38, 53 n.3 (2d Cir. 2007), summary judgment is also granted as to plaintiffs' state claim.

## C. Plaintiffs' Motions

Plaintiffs moved for class certification and to appoint Brian L. Bromberg, Esq. as the attorney for that class. (Dkt. Nos. 49, 73.) Because plaintiffs' claims are dismissed in their entirety, these motions are denied as moot.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 48) is **GRANTED** and that all claims against defendants are **DISMISSED**; and it is further

**ORDERED** that the plaintiffs' motion for class certification (Dkt. No. 49) is **DENIED**; and it is further

**ORDERED** that the plaintiffs' motion to appoint class counsel (Dkt. No. 73) is **DENIED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 28, 2011

19

Albany, New York

_____
Gary L. Sharpe
U.S. District Judge

20